**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHAREHOLDER REPRESENTATIVE SERVICES LLC,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,<br><br>Defendant. | Civil Action No. 16-2886 (JMV)<br><br>**OPINION AND ORDER** |

**CLARK, Magistrate Judge**

This matter comes before the Court on a motion by Plaintiff Shareholder Representative Services ("Plaintiff" or "SRS") pursuant to Federal Rule of Civil Procedure 26(b)(5)(B) to resolve an issue of privilege concerning four (4) documents produced in discovery to Defendant National Union Fire Insurance Company of Pittsburgh, PA. ("Defendant" or "National Union") [Dkt. No. 70]. National Union opposes the motion [Dkt. No. 75]. For the reasons set forth below, Plaintiff's motion is **GRANTED**.

**I.     BACKGROUND**

This insurance coverage action arises out of Plaintiff's claim that Defendant has improperly refused to honor its coverage obligations in an executive liability policy that Defendant sold to EKR Holdings, Inc. ("EKR"), SRS's predecessor in interest, with a policy period of June 1, 2009 to June 1, 2010 ("the Policy"). Two separate actions against EKR and/or its directors or officers were filed in April of 2011 (the "2011 Action") and April of 2014 (the "2014 Action") (collectively "the Underlying Actions"). According to Plaintiff, although it properly notified Defendant of the

1

Underlying Actions and submitted claims for coverage, Defendant has refused to reimburse Plaintiff for the settlement and defense costs incurred as provided for in the Policy.

The present motion arises from Plaintiff's allegedly inadvertent disclosure of four documents (collectively "the Documents") to Defendant in discovery which Plaintiff claims are protected by the attorney-client privilege. The Documents, which were submitted to the Court *in camera*, are email communications related to the 2011 Action between some combination of EKR's in-house counsel, Alina Jarjour; EKR's outside counsel for the Underlying Actions, Matthew DelDuca and Angelo Stio of Pepper Hamilton, LLP (collectively referred to as "Pepper Hamilton"); and the defendants in the Underlying Actions. Specifically, the Documents arise out of discussions between the foregoing parties regarding Pepper Hamilton's representation of the Defendants in the 2011 Action.

The Documents were produced to Defendant in June 2017. According to Plaintiff, it became aware of the inadvertent production of the Documents in February 2018 when Defendants stated their intention to cite to the Documents in a joint submission the parties were preparing for the Court. Upon discovering that the Documents were produced, Plaintiff claims it "immediately" put Defendant on notice that the Documents are privileged and were inadvertently produced, identified the basis of privilege for each of the Documents, and requested that the Documents be returned pursuant to Federal Rule of Civil Procedure 26(b)(5)(B). Dkt. No. 70 at p. 4.

Defendant acknowledges that it "honored [Plaintiff's] initial assertion of the attorney-client privilege" with respect to the Documents. Dkt. No. 75 at p. 8. Defendant, however, has since changed its position. According to Defendant, the defense and settlement costs incurred by Plaintiff in the Underlying Actions for which Plaintiff now seeks reimbursement in this litigation include costs incurred on behalf of certain private equity funds named as defendants in the

Underlying Actions (the "Venture Capital Defendants"), which were not insured by National Union. Defendant claims that it has received information from Pepper Hamilton suggesting that Plaintiff is in possession of other insurance policies covering the Venture Capital Defendants and joint defense agreements between the defendants in the 2011 Action. Although Defendant has since obtained a copy of the joint defense agreement it sought from Plaintiff, Defendant has not been provided with any insurance policies for the Venture Capital Defendants despite its requests for such information. When Plaintiff completed its document production on November 7, 2018, Plaintiff "finally made the affirmative representation that the documents sought by [Defendant] were not its possession . . . ." Dkt. No. 75 at p. 9. Based upon Plaintiff's representation, the Documents, which Defendant contends will aid in its search for information regarding the existence of other insurance policies, "gained specific importance" *Id.* Defendant challenged Plaintiff's claim of privilege as to the Documents on November 12, 2018. The present motion followed.

## II. DISCUSSION

Although curiously not cited by the parties, Plaintiff's motion is controlled by Federal Rule of Evidence 502(b). Pursuant to Rule 502(b), the inadvertent disclosure of privileged information does not operate as a waiver if: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)."

"In determining whether a production was inadvertent, the Court must conduct a two-step analysis. First, the Court must determine that the documents produced were protected by a privilege. Second, the Court must determine whether the three elements in Rule 502(b) are met,

so that the privilege is not waived." *United States v. Fishoff*, No. CR 15-586 (MAS), 2016 WL 4414780, at *3 (D.N.J. Aug. 16, 2016). The disclosing party bears the burden of demonstrating that the elements of Federal Rule of Evidence 502(b) have been satisfied. *D'Onofrio v. Borough of Seaside Park,* No. 09–6220, 2012 WL 1949854, at *7 (D.N.J. May 30, 2012). Similarly, the burden of proving the existence of privilege rests "upon the party asserting the privilege." *In re Grand Jury,* 603 F.2d 469, 474 (3d Cir.1979) (citation omitted).

The Court first turns to the issue of privilege. The parties do not appear to dispute that the Documents are protected by the attorney-client privilege. Rather, Defendant claims that it is entitled to the Documents under the "common interest" doctrine. "The 'common interest' doctrine applies when multiple persons are represented by the same attorney." *N. River Ins. Co. v. Philadelphia Reinsurance Corp.*, 797 F. Supp. 363, 366 (D.N.J. 1992). "Under the common interest doctrine, although an attorney actually represents only one party, there is no waiver of the attorney-client privilege by disclosure of privileged communications to third parties with[in] a 'community of interest.'" *Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66, 69 (D.N.J. 1992). "A community of interest exists where different persons or entities 'have an identical legal interest with respect to the subject matter of a communication between an attorney and client concerning legal advice . . . .The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial.'" *Id.* (citing *Duplan Corp. v. Deering Milliken Inc.,* 397 F.Supp. 1146, 1172 (S.D.S.C. 1974)), *see also In Re State Commission of Investigation Subpoena Number 5441,* 226 N.J.Super. 461, 466, 544 A.2d 893 (App. Div. 1988), *Weil Ceramics & Glass v. Work,* 110 F.R.D. 500, 502 (E.D.N.Y. 1986)).

In the context of insurance coverage actions, the common interest doctrine applies "when counsel has been retained or paid for by the insurer, and allows either party to obtain attorney-

client communications related to the underlying facts giving rise to the claim, because the interests of the insured and insurer in defeating the third-party claim against the insured are so close that no reasonable expectations of confidentiality is said to exist." *N. River Ins. Co.*, 797 F. Supp. at 366 (citations omitted). The common interest doctrine is applicable "only when it has been determined that the defendant insurer is obligated to defend the underlying action brought against the insured and only when the parties have *employed* a lawyer to act for them in common." *NL Indus., Inc. v. Commercial Union Ins. Co.*, 144 F.R.D. 225, 231 (D.N.J. 1992) (citations omitted) (emphasis in original). The fact that an insured's actions "inure to the ultimate benefit of the insurer" does not create an "employment" of the insured's counsel on the insurer's behalf. *In re Envtl. Ins. Declaratory Judgment Actions*, 259 N.J. Super. 308, 315, 612 A.2d 1338, 1342 (App. Div. 1992).

Defendant claims that the conduct of the parties in the Underlying Actions gave rise to a common interest between SRS and National Union which entitles National Union to SRS's otherwise privileged communications with Pepper Hamilton. According to Defendant, its involvement in the Underlying Action, which included requesting and receiving status reports and litigation budgets from Pepper Hamilton, conferring with Pepper Hamilton regarding a proposed settlement in the Underlying Actions, and reimbursing SRS for a portion of the defense costs, demonstrates the existence of a common interest between SRS and National Union.[1] The Court disagrees. It is undisputed that SRS retained Pepper Hamilton without any involvement or input from National Union, and although National Union eventually agreed to reimburse SRS for a

---

[1] In support of its contention, National Union relies on *Alit (No. 1) Ltd. v. Brooks Ins. Agency*, No. CIV.A. 10-2403 FLW, 2012 WL 959332, at *1 (D.N.J. Mar. 21, 2012) and *Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66 (D.N.J. 1992). Neither supports Defendant's position. *Alit (No. 1) Ltd.* involved a "unique situation in which a third party is arguing against the existence of a common interest in order to compel disclosure of information exchanged between an insurer and its insured." *Alit (No. 1)*, 2012 WL 959332, at *10. Such a situation is inapplicable to the present dispute. In *Pittston Co.*, the Court made clear that a common interest requires the existence of "an actual triadic relationship between insured, attorney and insurer" and does not apply in a situation such as a the present where the insurer disputes coverage for the underlying claim. *Pittston Co.*, 143 F.R.D. at 71.

5

portion of its defense costs, National Union never "made payment on any of Pepper Hamilton's invoices." Dkt. No. 75, Declaration of Andrew L. Indeck at Ex. I.

Cases such as the present where the insurer merely approved of the counsel retained by the insured, requested status reports and billing statements from the insured's counsel, and agreed to provide reimbursement for the defense costs incurred, are "distinctly different from those in cases . . . wherein an attorney selected by the insurer was assigned to represent the insured in the defense of a covered claim." *Historic Smithville Dev. Co. v. Chelsea Title & Guar. Co.*, 190 N.J. Super. 567, 572, 464 A.2d 1177, 1180 (App. Div. 1983). Even when "the insurer ultimately absorbs the costs of the insured's legal representation," there is no common interest created where "a lawyer-client relationship between [the insurer] and [counsel] was not contemplated" by the parties. *Id.*

Here, it undisputed that SRS retained Pepper Hamilton as its counsel without National Union's involvement and that notwithstanding National Union communications with Pepper Hamilton and requests for information, National Union never directed or placed conditions on Pepper Hamilton's representation of SRS. *See* Indeck Decl. at Ex. I, p. 6. Such circumstances demonstrate that no lawyer-client relationship between Pepper Hamilton and National Union was ever contemplated. *See Historic Smithville*, 190 N.J. Super. at 572 (finding no attorney-client relationship between insurer and insured's counsel where insured retained counsel without involvement from insurer and insurer requested information from counsel but "postulated no conditions" on its representation of the insured).

Furthermore, and ironically in light of Defendant's present position, it is the Documents themselves which most clearly demonstrate that Plaintiff and Pepper Hamilton, due to Defendant's initial denial of coverage, contemplated an adversarial relationship with Defendant over the issue of coverage and that the parties viewed Pepper Hamilton as counsel for Plaintiff, not as joint
6

counsel for Plaintiff and Defendant. *See* Document Nos. 2 and 4. Accordingly, because National Union and SRS did not "employ[] a lawyer to act for them in common," and therefore do not share the requisite common interest, the Court finds that the common interest exception does not apply. *In re Envtl. Ins. Declaratory Judgment Actions*, 259 N.J. Super. at 315.

In addition to the common interest exception, Defendant claims the Documents are not privileged on two additional grounds. First, specifically as to Document 3, Defendant asserts that the subject email is not privileged because it was sent to two individuals whom Defendant claims were not EKR Board Members or defendants in the Underlying Actions. Specifically, Document 3 was sent to cbridge@MPMCapitalist.com and Schwartz@newspringCapitalist.com. Defendant's contention in this regard appears to be mistaken. MPM Bioventures Fund II, L.P. and Newspring Capital, L.P. were named defendants in the Underlying Actions. *See* Compl. at Ex. A, Ex. B. Accordingly, the Court declines to find that the inclusion of the individuals identified by Defendant in Document 3 waived the applicable privilege.

Finally, Defendant claims that Plaintiff has failed to provide a privilege log and has therefore waived any claim of privilege. The Court declines to find at this juncture that Plaintiff's failure to provide a privilege log has resulted in a waiver of its claims of privilege. However, a privilege log is indeed required under Federal Rule of Civil Procedure 26(b)(5) and Plaintiff shall provide Defendant with a privilege log for the entirety of its document production within thirty (30) days from the date of this Order.

Having determined that the Documents are privileged, the Court now turns to the issue of whether the elements of Federal Rule of Evidence 502(b) have been met. Because the parties have failed to include any mention or discussion of Rule 502(b), the Court is left without much of the information necessary to resolve this issue. However, even without such information, the Court

counsel for Plaintiff and Defendant. *See* Document Nos. 2 and 4. Accordingly, because National Union and SRS did not "employ[] a lawyer to act for them in common," and therefore do not share the requisite common interest, the Court finds that the common interest exception does not apply. *In re Envtl. Ins. Declaratory Judgment Actions*, 259 N.J. Super. at 315.

In addition to the common interest exception, Defendant claims the Documents are not privileged on two additional grounds. First, specifically as to Document 3, Defendant asserts that the subject email is not privileged because it was sent to two individuals whom Defendant claims were not EKR Board Members or defendants in the Underlying Actions. Specifically, Document 3 was sent to cbridge@MPMCapitalist.com and Schwartz@newspringCapitalist.com. Defendant's contention in this regard appears to be mistaken. MPM Bioventures Fund II, L.P. and Newspring Capital, L.P. were named defendants in the Underlying Actions. *See* Compl. at Ex. A, Ex. B. Accordingly, the Court declines to find that the inclusion of the individuals identified by Defendant in Document 3 waived the applicable privilege.

Finally, Defendant claims that Plaintiff has failed to provide a privilege log and has therefore waived any claim of privilege. The Court declines to find at this juncture that Plaintiff's failure to provide a privilege log has resulted in a waiver of its claims of privilege. However, a privilege log is indeed required under Federal Rule of Civil Procedure 26(b)(5) and Plaintiff shall provide Defendant with a privilege log for the entirety of its document production within thirty (30) days from the date of this Order.

Having determined that the Documents are privileged, the Court now turns to the issue of whether the elements of Federal Rule of Evidence 502(b) have been met. Because the parties have failed to include any mention or discussion of Rule 502(b), the Court is left without much of the information necessary to resolve this issue. However, even without such information, the Court

finds that Plaintiff has narrowly satisfied its burden as to Rule 502(b). *See Smith v. Allstate Ins. Co.*, 912 F. Supp. 2d 242, 248 (W.D. Pa. 2012) (finding that party met its burden under Rule 502(b) even in the absence of any discussion of the factors thereunder).

There does not appear to be any dispute that the production of the Documents was inadvertent. Accordingly, the first factor weighs in favor of Plaintiff. As to the second factor, because Plaintiff has failed to provide any information regarding the steps it took to prevent disclosure, the Court finds that this factor weighs against Plaintiff. The Court now turns to the final factor, which considers the timing and reasonableness of the measures taken by Plaintiff to rectify the disclosure. The parties do not dispute that upon discovering that the Documents were inadvertently produced, Plaintiff immediately notified Defendant of its mistake. Defendant also acknowledges that it initially honored Plaintiff's privilege assertion. Although Defendant later changed its position when it decided it wished to utilize the Documents in this litigation,[2] it was "not unreasonable for [Plaintiff] to rely on its understanding that the matter had been resolved . . . ." *Smith*, 912 F. Supp. 2d at 248. Accordingly, the Court finds that the third factor weighs in favor of Plaintiff.

Based on the foregoing, the Court finds that the Documents are privileged and that the balance of the factors under Federal Rule of Evidence 502(b) weigh in favor of Plaintiff. Accordingly, Plaintiff's motion is **GRANTED**, and pursuant to Federal Rule of Civil Procedure 26(b)(5)(B), Defendant must destroy or promptly return all copies of the Documents and any copies it has.

---

[2] Although the Court decides the present motion in favor of Plaintiff on other grounds, the Court notes that Defendant's conduct in initially agreeing to honor Plaintiff's claims of privilege only to reverse course approximately nine months later upon deciding that the Documents would be useful is untenable. Federal Rule of Civil Procedure 25(b)(5)(B) provides that a party in receipt of an inadvertent privileged disclosure must "promptly return, sequester, or destroy the specified information" and "may promptly present the information under seal for a determination of the claim." Rule 25(b)(5)(B) requires any challenge thereunder to be made "promptly" and does not provide any exception to that requirement based upon the receiving party's changing level of interest in the subject information.

### III. CONCLUSION AND ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 16th day of September, 2019,

**ORDERED** that Plaintiff's motion for the entry of a protective order [Dkt. No. 70] is **GRANTED**; and it is further

**ORDERED** that Defendant shall destroy or promptly return all copies of the Documents; and it is further

**ORDERED** that Plaintiff shall provide Defendant with a privilege log within thirty (30) days from the date of this Order.

                                                  s/ James B. Clark, III
                                                  **JAMES B. CLARK, III**
                                                  **United States Magistrate Judge**